Electronically Filed
Intermediate Court of Appeals
CAAP-11-0000653
31-MAR-2014
11:20 AM

CAAP-11-0000653

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

STATE OF HAWAI'I, Plaintiff-Appellee,
v.
JONATHAN McQUEEN, also known as JONATHAN NATURE,
Defendant-Appellant.

APPEAL FROM THE CIRCUIT COURT OF THE SECOND CIRCUIT
(CR. NOS. 08-1-0191(2) & 08-1-0435(2))

MEMORANDUM OPINION
(By: Nakamura, C.J., and Leonard and Reifurth, JJ.)

Defendant-Appellant Jonathan McQueen (McQueen), also known as Jonathan Nature, was charged with various drug-related offenses and permitted to participate in the Maui Drug Court Program. The Circuit Court of the Second Circuit (Circuit Court)[1] terminated McQueen's participation in the Drug Court Program on the ground that he purportedly was supplying drugs to Manuel Lopes, III (Lopes), another participant in the Program. Lopes had been arrested on drug charges while he and McQueen were both participating in the Drug Court Program. Lopes agreed to cooperate with the police, named McQueen as his supplier of methamphetamine, and made several recorded phone calls to McQueen. None of the recorded phone calls made any specific

---

[1] The Honorable Shackley F. Raffetto presided over the proceedings relevant to this appeal.

reference to drugs.  At a hearing on the motion to terminate McQueen's participation in the Program, Lopes recanted his allegations against McQueen.  Lopes testified that he had lied to the police in saying that McQueen was his drug supplier and that he and McQueen were not discussing a drug transaction in the recorded conversations.

Nevertheless, the Circuit Court granted the motion of Plaintiff-Appellee State of Hawai'i (State) to terminate McQueen's participation in the Drug Court Program.  After a stipulated facts trial, the Circuit Court found McQueen guilty of all the drug-related charges.  It sentenced McQueen to consecutive terms of ten years of imprisonment on one count of second-degree promotion a dangerous drug and five years of imprisonment on one count of prohibited acts related to drug paraphernalia, and it ran the various terms of imprisonment on the remaining counts concurrently.

On appeal, McQueen argues that in terminating him from the Drug Court Program, the Circuit Court improperly relied on Lopes's hearsay statements to the police as substantive evidence, when they were only admitted for impeachment purposes.  He also argues that the Circuit Court erred in basing its imposition of consecutive sentences on Lopes's statements to the police.

We conclude that because the Circuit Court only admitted Lopes's statements to the police identifying McQueen as his drug supplier to impeach Lopes's hearing testimony, the Circuit Court erred in relying on Lopes's statements to the police as substantive evidence.  We further conclude that the remaining evidence, and in particular the recorded conversations, were insufficient to support the Circuit Court's decision to terminate McQueen from the Drug Court Program.  Accordingly, we hold that the Circuit Court erred in terminating McQueen's participation in the Drug Court Program.  We vacate the "Judgment [of] Conviction and Sentence" (Judgment) entered by the Circuit Court on August 9, 2011, and we remand the case for further proceedings.

BACKGROUND

I.

McQueen was charged in Cr. No. 08-1-0191(2) with second-degree promoting a dangerous drug (Count 1); prohibited acts related to drug paraphernalia (Count 2); and third-degree promoting a detrimental drug (Count 3). He was also charged in Cr. No. 08-1-0435(2) with second-degree promotion a dangerous drug (Count 5); prohibited acts related to drug paraphernalia (Count 6); third-degree promoting a detrimental drug (Count 7); fourth-degree promoting a harmful drug (Count 8); and third-degree promoting a dangerous drug (Count 9).

As an alternative to standing trial, McQueen petitioned in both cases for admission to the Maui Drug Court Program. As part of his petitions, McQueen admitted to the charged offenses and signed Maui Drug Court Program Admissions Agreements, in which he agreed to comply with the conditions of the Program if his petitions were approved. The Circuit Court approved McQueen's petitions and admitted him into the Maui Drug Court Program.

McQueen participated in the Program for about a year, without any apparent problems. On October 6, 2010, McQueen advanced to the fourth phase of the Program, and the Circuit Court congratulated him on his progress. However, on October 14, 2010, the State moved to terminate McQueen from the Program. After a hearing held on November 23, 2010, and December 14, 2010, the Circuit Court terminated McQueen from the Program. The Circuit Court ruled that McQueen had violated conditions A and H of the Drug Court Program, which respectively required: (1) that he "commit [himself] to full participation in the Maui Drug Court Program . . . toward the goal of remaining clean and sober for the rest of [his] life"; and (2) that he "not knowingly associate with any person possession or using illegal drugs."

II.

The State's motion to terminate McQueen's participation in the Program was based on an undercover operation involving

3

Lopes.  At the time, Lopes was also a participant in the Drug Court Program.  On September 2, 2010, the police arrested Lopes after searching a house and finding crystal methamphetamine. Lopes agreed to cooperate with the police.  Lopes identified McQueen as his drug supplier, and Lopes agreed to make recorded phone calls to McQueen to arrange the purchase of an ounce of crystal methamphetamine for $2,000.

On September 2, 2010, Lopes made four recorded phone calls to McQueen.  During these phone calls, Lopes did not specifically refer to drugs or money.  Lopes used the term "sandwiches," which he told the police meant $2,000.  Although the purported plan was to have Lopes meet with McQueen and purchase crystal methamphetamine, McQueen did not come to meet with Lopes.

When Lopes testified at the hearing on the State's motion to terminate McQueen from the Program, Lopes recanted the allegations he made to the police that McQueen was his drug supplier.  Lopes testified that when he was arrested, he panicked and gave the police McQueen's name so he could buy time and stay out of jail.  Lopes testified that he had never purchased crystal methamphetamine from McQueen and that his statements to the police that McQueen was his supplier were lies.

Lopes explained the recorded phone conversations by testifying that the references to "sandwiches" actually meant sandwiches because he often bought McQueen lunch in exchange for rides.  Lopes also testified that McQueen was helping him purchase a truck from one of McQueen's friends.  Lopes stated that although he had led the police to believe he was arranging a drug purchase from McQueen, his conversations with McQueen related to real sandwiches and the purchase of a truck.  Lopes testified that he kept his conversation with McQueen vague so that the police would not realize Lopes's deceit.

III.

During the hearing, McQueen's counsel acknowledged that Lopes's statements to the police that McQueen was his drug

4

supplier were admissible as prior inconsistent statements to impeach Lopes's hearing testimony which exonerated McQueen. McQueen's counsel, however, objected to Lopes's statements to the police being considered for the truth of the matter asserted. The Circuit Court agreed that Lopes's statements were being admitted only to determine Lopes's credibility:

> [McQueen's counsel]:  Judge, I assume that [Lopes's statement to the police that McQueen was his drug supplier] is coming in as a prior inconsistent statement, I understand that, but it doesn't come in for the truth of the matter asserted, just to go as to his credibility?
>
> THE COURT:  I don't know.
>
> [McQueen's counsel]:  That's my objection, if it's coming in.
>
> THE COURT:  He was attacking credibility.
>
> [Prosecutor]:  That's correct.
>
> THE COURT:  Okay.
>
> [McQueen's counsel]:  <u>I am asking that it just come in for that limited purpose.  There has been an attack on his credibility.</u>
>
> THE COURT:  <u>Very well</u>.

(Emphasis added.)

Later, during the testimony of Officer Asbel Polanco, the Circuit Court confirmed that Lopes's statements to the police were only being admitted as prior inconsistent statements, and not for their truth.

> [McQueen's counsel]:  Now, I just want to clarify. [What Lopes said to the police] is only coming in as a prior inconsistent statement; correct?
>
> THE COURT:  Whatever Lopes said --
>
> [McQueen's counsel]:  A prior inconsistent statement?
>
> THE COURT:  -- that he's already -- yeah.
>
> [McQueen's counsel]:  Not for the truth of the matter asserted?  That's all.  I just want to clarify that.
>
> [Prosecutor]:  Right.
>
> THE COURT:  Right.  It's only as to what Lopes said.
>
> [Prosecutor]:  That's correct.
>
> [McQueen's counsel]:  Right.

IV.

Despite its rulings that Lopes's statements to the police were being admitted only for impeachment as prior inconsistent statements, the Circuit Court relied on those statements as substantive evidence in finding that McQueen had violated the conditions of the Drug Court Program and in terminating him from the Program. The Circuit Court stated, in relevant part:

> I am convinced, based on the totality of the circumstances, that when Mr. Lopes identified [McQueen] as being involved in the drug deal [in his statements to the police], that that was credible testimony, and his change of tune as he progressed through his testimony was just an effort to do nothing but that, but change his tune.

## DISCUSSION

McQueen argues that the Circuit Court improperly relied on Lopes's hearsay statements to the police as substantive evidence, when they were only admitted for impeachment purposes. We agree.

In conducting the hearing on the State's motion to terminate McQueen from the Drug Court Program, the Circuit Court applied the Hawaii Rules of Evidence (HRE) regarding hearsay. At various points of the hearing, the Circuit Court sustained hearsay objections made by McQueen's counsel.

More importantly, the Circuit Court specifically ruled that Lopes's statements to the police, which implicated McQueen as Lopes's drug supplier, were only being admitted as prior inconsistent statements to impeach Lopes's hearing testimony. McQueen was entitled to rely upon the Circuit Court's rulings in defending against the State's attempt to terminate him from the Drug Court Program. In addition, the State did not contest the Circuit Court's rulings that Lopes's prior statements to the police were only being admitted for impeachment, and the State indicated its agreement with these rulings. Under these circumstances, we conclude that the Circuit Court was bound by its rulings, which admitted Lopes's statements to the police only

6

for impeachment and not for their truth, in deciding the State's motion to terminate McQueen from the Program.[2]

Lopes's prior statements to the police were the only evidence directly linking McQueen to any involvement in illegal drugs. However, Lopes's prior statements to the police were not admitted for their truth, but only for impeachment, and did not constitute substantive evidence. See State v. Smith, 63 Haw. 51, 53 n.2, 621 P.2d 343, 345 n.2 (1980) (stating that the court was not considering statements admitted for impeachment purposes and not as substantive evidence in evaluating the sufficiency of the evidence on appeal); State v. Julian, 719 N.E.2d 96, 101 n.12 (Ohio Ct. App. 1998) ("While [a witness's] prior inconsistent statement could be used to impeach her trial testimony and attack her credibility, the prior statement itself was not substantive evidence and could not be considered as evidence of the crime itself."). At the hearing, the State raised material questions concerning Lopes's explanation of the nature and meaning of his conversations with McQueen in the recorded phone calls. However, the phone calls themselves were insufficient to show that McQueen had been involved in any illegal drug activity or that he had knowingly associated with individuals possessing or using illegal drugs.

Because the Circuit Court did not admit Lopes's statements to the police for their truth, it could not consider such statements as substantive evidence in ruling on the termination motion. See Smith, 63 Haw. at 53 n.2, 621 P.2d at 345 n.2. The remaining evidence was insufficient to support the Circuit Court's finding that McQueen had been involved in

---

[2] In light of our analysis, we need not resolve the parties' dispute over whether the HRE apply to proceedings to terminate a defendant's participation in a Drug Court Program. McQueen contends that the HRE apply to such proceedings. He argues that HRE Rule 1101 (1993) provides that the HRE "apply to all courts of the State of Hawaii, except as otherwise provided by statute[,]" and that HRE Rule 1101 exempts proceedings "granting or revoking probation," but does not exempt Drug Court Program termination proceedings. The State, on the other hand, argues that because a Drug Court Program participant is analogous to a probationer, the HRE should not apply.

attempting to arrange a drug deal with Lopes and therefore McQueen had violated the conditions of the Drug Court Program. Accordingly, the Circuit Court erred in terminating McQueen from the Drug Court Program, which triggered the Circuit Court's subsequent adjudication of McQueen as guilty on the charged offenses and his sentencing.

CONCLUSION

We hold that the Circuit Court erred in terminating McQueen from the Drug Court Program because there was insufficient evidence to support the Circuit Court's decision. We vacate the Circuit Court's Judgment, and we remand for further proceedings consistent with this Memorandum Opinion.

DATED:  Honolulu, Hawai'i, March 31, 2014.

On the briefs:

Benjamin E. Lowenthal
(Law Office of Philip H.
 Lowenthal)
for Defendant-Appellant

Cody E. Minatodani
Deputy Prosecuting Attorney
County of Maui
for Plaintiff-Appellee

Chief Judge

Associate Judge

Associate Judge

8